# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CAUSE OF ACTION INSTITUTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF COMMERCE, | ) | Case No. 1:18-cv-2397 (JEB) |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendant United States Department of Commerce respectfully moves for summary judgment. The bases for this Motion are set forth in the accompanying Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, the Statement of Material Facts as to Which There is No Genuine Dispute, and the Declaration of Michael Bogomolny of the United States Department of Commerce. A proposed order is also attached.

Dated:  October 4, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director, Federal Programs Branch

 /s/ Robert M. Norway
ROBERT M. NORWAY
Trial Attorney (D.C. Bar No. 490,715)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, N.W.
Washington, D.C. 20530
Telephone: (202) 353-0889
Facsimile: (202) 616-8470
Email: robert.m.norway@usdoj.gov

*Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CAUSE OF ACTION INSTITUTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| UNITED STATES DEPARTMENT | ) | Case No. 1:18-cv-2397 (JEB) |
| OF COMMERCE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
<u>SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ....................................................................................................................i

TABLE OF AUTHORITIES ............................................................................................................ii

INTRODUCTION ...........................................................................................................................1

BACKGROUND ............................................................................................................................1

LEGAL STANDARD ......................................................................................................................3

ARGUMENT ..................................................................................................................................4

     I.      Commerce Properly Withheld Information Pursuant to FOIA's Exemption 5. ..........4

           A.     Commerce properly relied on the attorney client privilege. ...............................5

           B.     Commerce properly relied on the deliberative process privilege. ......................6

     II.     Commerce Properly Withheld Information Pursuant to FOIA's Exemption 6. ........11

     III.    Commerce Did Not Waive Its Ability to Protect Certain Information Under
           Exemptions 5 and 6 by Mistakenly Producing It............................................................14

CONCLUSION..............................................................................................................................16

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                              <u>Page(s)</u>

*Access Reports v. DOJ,*
    926 F.2d 1192 (D.C. Cir. 1991) .................................................................7

*ACLU v. CIA,*
    710 F.3d 422 (D.C. Cir. 2013) ...............................................................14

*Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.,*
    110 F. Supp. 3d 215 (D.D.C. 2015) .........................................................8

*Astley v. Lawson,*
    1991 WL 7162 (D.D.C. Jan. 11, 1991) ..................................................15

*Blackwell v. FBI,*
    680 F. Supp. 2d 79 (D.D.C. 2010) .........................................................15

*Bloomberg, L.P. v. SEC,*
    357 F. Supp. 2d 156 (D.D.C. 2004) ....................................................7, 11

*Bowles v. Nat'l Ass'n of Home Builders,*
    224 F.R.D. 246 (D.D.C. 2004) ...............................................................15

*Coastal States Gas Corp. v. Dep't of Energy,*
    617 F.2d 854 (D.C. Cir. 1980) ......................................................... 5, 7, 9

*Comm. on Oversight & Gov't Reform, U.S. House of Representatives v. Lynch,*
    156 F. Supp. 3d 101 (D.D.C. 2016) .........................................................8

*Competitive Enter. Inst. v. EPA,*
    12 F. Supp. 3d 100 (D.D.C. 2014) ...........................................................8

*Competitive Enter. Inst. v. EPA,*
    232 F. Supp. 3d 172 (D.D.C. 2017) .........................................................8

*CREW v. DOJ,*
    949 F. Supp. 2d 225 (D.D.C. 2013) .........................................................8

*Dudman Comm'ns Corp. v. Dep't of Air Force,*
    815 F.2d 1565 (D.C. Cir. 1987) ...............................................................9

*Elec. Frontier Found. v. DOJ,*
    739 F.3d 1 (D.C. Cir. 2014) .....................................................................7

*FBI v. Abramson,*
    456 U.S. 615 (1982) .................................................................................4

*Fitzgibbon v. CIA,*
    911 F.2d 755 (D.C. Cir. 1990) ........................................................................................14

*Formaldehyde Inst. v. Dep't of Health and Human Servs.,*
    889 F.2d 1118 (D.C. Cir. 1989) ........................................................................................5

*Freedom Watch, Inc. v. NSA,*
    49 F. Supp. 3d 1 (D.D.C. 2014) ........................................................................................8

*In re Sealed Case,*
    737 F.2d 94 (D.C. Cir. 1984) ........................................................................................5, 6

*John Doe Agency v. John Doe Corp.,*
    493 U.S. 146 (1989) ........................................................................................4

*Jordan v. DOJ,*
    591 F.2d 753 (D.C. Cir. 1978) ........................................................................................7

*Judicial Watch, Inc. v. DOD,*
    715 F.3d 937 (D.C. Cir. 2013) ........................................................................................4

*Judicial Watch, Inc. v. DOJ,*
    365 F.3d 1108 (D.C. Cir. 2004) ........................................................................................5

*Judicial Watch, Inc. v. FDA,*
    449 F.3d 141 (D.C. Cir. 2006) ........................................................................................7, 11, 12

*Judicial Watch, Inc. v. U.S. Dep't of State,*
    282 F. Supp. 3d 36 (D.D.C. 2017) ........................................................................................10

*Judicial Watch, Inc. v. U.S. Dep't of the Treasury,*
    796 F. Supp. 2d 13 (D.D.C. 2011) ........................................................................................8

*Kay v. FCC,*
    867 F. Supp. 11 (D.D.C. 1994) ........................................................................................14

*Light v. DOJ,*
    968 F. Supp. 2d 11 (D.D.C. 2013) ........................................................................................3

*Mapother v. DOJ,*
    3 F.3d 1533 (D.C. Cir. 1993) ........................................................................................7

*Mead Data Cent., Inc. v. U.S Dep't of the Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) ........................................................................................5

*Medina-Hincapie v. Dep't of State,*
    700 F.2d 737 (D.C. Cir. 1983) ........................................................................................14

Cases, cont.                                                                                            Page(s)

*Military Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) ................................................................. 4

*Montgomery v. IRS*,
    330 F. Supp. 3d 161 (D.D.C. 2018), *reconsideration denied*,
    356 F. Supp. 3d 74 (D.D.C. 2019) ......................................................... 14

*Nat'l Ass'n of Home Builders v. Norton*,
    309 F.3d 26 (D.C. Cir. 2002) ................................................................. 12

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) .............................................................................. 6, 7

*People for the Am. Way Found. v. Nat'l Park Serv.*,
    503 F. Supp. 2d 284 (D.D.C. 2007) ....................................................... 12

*Prison Legal News v. Exec. Office for U.S. Attorneys*,
    628 F.3d 1243 (10th Cir. 2011) .............................................................. 14

*Pub. Citizen Health Research Group v. FDA*,
    953 F. Supp. 400 (D.D.C. 1996) ............................................................ 14

*Rockwell Int'l Corp. v. DOJ*,
    235 F.3d 598 (D.C. Cir. 2001) ................................................................. 5

*Russell v. Dep't of the Air Force*,
    682 F.2d 1045 (D.C. Cir. 1982) ............................................................ 7, 9

*Seife v. Dep't of State*,
    298 F. Supp. 3d 592 (S.D.N.Y. 2018) .................................................... 13

*Shapiro v. DOJ*,
    153 F. Supp. 3d 253 (D.D.C. 2016) ....................................................... 11

*Sherman v. Dep't of the Army*,
    244 F.3d 357 (5th Cir. 2001) ................................................................. 14

*Taitz v. Astrue*,
    806 F. Supp. 2d 214 (D.D.C. 2011) ......................................................... 3

*Tax Analysts v. IRS*,
    117 F.3d 607 (D.C. Cir. 1997) ................................................................. 5

*U.S. Dep't of State v. Wash. Post Co.*,
    456 U.S. 595 (1982) .............................................................................. 12

Cases, cont.                                                                Page(s)

*United States v. Story Cty., Iowa,*
      28 F. Supp. 3d 861 (S.D. Iowa 2014) ..........................................................15

*Williams v. District of Columbia,*
      806 F.Supp.2d 44 (D.D.C. 2011) ................................................................15

*Wolf v. CIA,*
      473 F.3d 370 (D.C. Cir. 2007) ..................................................................14

*Wolfe v. U.S. Dep't of Health and Human Servs.,*
      839 F.2d 768 (D.C. Cir. 1988) ....................................................................7


Regulations

5 U.S.C. § 552 ....................................................................................3, 5, 11


Rules

Fed. R. Civ. P. 56(a) ..................................................................................3


Additional Authorities

*Requirements for Submissions Requesting Exclusions From the Remedies Instituted in Presidential*
      *Proclamations Adjusting Imports of Steel Into the United States and Adjusting Imports of*
      *Aluminum Into the United States; and the Filing of Objections to Submitted Exclusion Requests*
      *for Steel and Aluminum,* 83 Fed. Reg. 12,106 (Mar. 19, 2018) .......................................1

*Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum,*
      83 Fed. Reg. 46,026 (Sept. 1, 2018) ...............................................................1

## INTRODUCTION

This action concerns Freedom of Information Act ("FOIA") requests by Plaintiff Cause of Action Institute ("CoA Institute") to Defendant United States Department of Commerce ("Commerce") for the work calendars of various Commerce officials, including the Secretary's calendar, and records of communications to and from certain Commerce officials. Commerce is entitled to summary judgment because it has fully complied with its obligations under FOIA. Commerce properly withheld information protected by the attorney client and deliberative process privileges recognized by FOIA's Exemption 5, as well as certain personal information protected from disclosure by Exemption 6. Thus, the Court should grant Commerce's motion.

## BACKGROUND

In August and September 2018, CoA Institute submitted three separate FOIA requests to Commerce seeking the calendars of several high-ranking Commerce officials, including Secretary Wilber Ross; records concerning the staffing and procedures for processing product exclusion requests under Section 232 of the Trade Expansion Act of 1932;[1] and communications to or from eleven Commerce officials that contained certain search terms. *See* October 4, 2019 Declaration of Michael Bogomolny ("Bogomolny Decl.") ¶¶ 3, 5, 7.

Commerce acknowledged receipt of the FOIA Requests and assigned tracking numbers. Bogomolny Decl. ¶¶ 4, 6, 8. As referred to herein, the calendar request was assigned a tracking number ending in 1990; the staffing and procedures request was assigned a tracking number ending in 2062; and the communications request was assigned a tracking number ending in 2063. The

---

[1] In March 2018, Commerce was authorized to grant exclusions from certain customs duties upon request of affected parties. *See generally Requirements for Submissions Requesting Exclusions From the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum*, 83 Fed. Reg. 12,106 (Mar. 19, 2018); *Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026 (Sept. 1, 2018).

parties negotiated a narrowing of the 2063 Request.  *Id.* ¶ 9.  On October 18, 2018, CoA Institute filed this action.  *Id.* ¶ 10.

Commerce made a series of productions of responsive, non-exempt records between November, 2018 and June, 2019.  *Id.* ¶¶ 11-13, 16-17.  In total, Commerce produced 2,712 pages of records in its productions, withheld 26 records in full, and withheld information in part from a number of records.  *Id.* ¶¶ 12, 13, 16, 17.

The parties conferred regarding Commerce's withholdings, and CoA Institute's challenges thereto, on July 13, 2019.  Bogomolny Decl. ¶ 19.  CoA Institute represented that it is not challenging the adequacy of Commerce's search for responsive records, but that it is challenging 18 withholdings in Commerce's productions, as well as all of the records withheld in full in response to the 2063 Request.  *Id.* ¶¶ 19-20.  CoA Institute also notified Commerce, through counsel, that Commerce had included in its production at least nine entries in the Secretary's calendar of ethics opinions that were unredacted.  *Id.*

In conjunction with the preparation of its Vaughn index, counsel for Commerce, Mr. Bogomolny, subsequently brought the disclosure of ethics opinions to the attention of his leadership and began investigating the circumstances surrounding the disclosure.  Bogomolny Decl. ¶ 21-22, Ex. 12.  Mr. Bogomolny determined that during the processing of records in response to CoA Institute's FOIA requests, a portion of the Secretary's calendar was not properly reviewed and redacted prior to its production.  *Id.* ¶ 23.  While the entire calendar file had undergone global redactions of personally identifiable information, such as email addresses and telephone numbers, it was discovered that approximately 80 pages of the Secretary's calendar mistakenly had not been properly reviewed.  *Id.*

Commerce notified undersigned counsel about concerns with the disclosure of ethics opinions on August 21, 2019, and Commerce continued to discuss the issue with the Department of

Justice into September.  Bogomolny Decl. ¶¶ 25-27.  Commerce ultimately determined that the release of the information was inadvertent and not authorized.  *Id.* ¶¶ 28.

On September 23, 2019, Commerce notified CoA Institute that it had discovered that pages 208 to the end of the production of the Secretary's calendar only had some global exemptions applied but did not reflect a full review, and that as a result, some personal information and privileged material was inadvertently produced.  Bogomolny Decl. ¶¶ 29-30.  Commerce enclosed a corrected version of the Secretary's calendar and asked CoA Institute to replace its copy of the calendar with the corrected version.  *See* Ex. 12 to Bogomolny Decl.  Commerce also provided a change log showing the additional exemptions claimed.  *Id.* ¶ 30, Ex. 12.

Subsequently, the parties conferred regarding Commerce's additional withholdings asserted in the corrected version of the calendar.  Bogomolny Decl. ¶ 31. CoA Institute indicated that it was challenging the additional withholdings except for withholdings to telephone numbers, conference line passcodes, and email addresses, pursuant to Exemption 6.  *Id.*

## LEGAL STANDARD

Summary judgment is appropriate when a party can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" as to a claim or defense. Fed. R. Civ. P. 56(a).  "FOIA actions are typically resolved on summary judgment."  *See, e.g.*, *Taitz v. Astrue*, 806 F. Supp. 2d 214, 217 (D.D.C. 2011).  "The defendant in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information."  *Light v. DOJ*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013).  Commerce bears the burden of justifying the withholding of material responsive to Plaintiff's request, and this Court reviews Commerce's response to that request *de novo*.  *See* 5 U.S.C. § 552(a)(4)(B).

The Court may award summary judgment in a FOIA action solely on the basis of information provided by the agency through declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail," that "demonstrate that the information withheld logically falls within the claimed exemption[s]," and that are "not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible" to the court. *Judicial Watch, Inc. v. DOD*, 715 F.3d 937, 941 (D.C. Cir. 2013) (per curiam) (citation omitted).

## ARGUMENT

The FOIA represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence.'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted). Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). While these exemptions are to be "narrowly construed," *id.* at 630, courts must not fail to give them "meaningful reach and application." *John Doe*, 493 U.S. at 152. Here, Commerce properly withheld the challenged information pursuant to well-established FOIA exemptions.

## I.  Commerce Properly Withheld Information Pursuant to FOIA's Exemption 5.

As a result of its reasonable searches for responsive records, Commerce produced more than 2,700 pages of non-exempt materials responsive to CoA Institute's FOIA requests. Commerce properly withheld certain categories of information under FOIA Exemption 5's attorney client and deliberative process privileges.

FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption "encompass[es] the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including the attorney client and deliberative process privileges. *Rockwell Int'l Corp. v. DOJ*, 235 F.3d 598, 601 (D.C. Cir. 2001) (quoting *Formaldehyde Inst. v. Dep't of Health and Human Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989)); *see also Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1113 (D.C. Cir. 2004).

### A.    Commerce properly relied on the attorney client privilege.

The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. U.S Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977). The attorney-client privilege is not limited to the context of litigation. *See id.* at 252-53. The privilege "also protects communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'" *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984)). A court may infer confidentiality when the communications suggest that "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).

The information withheld by Commerce in categories A through C is plainly protected by the attorney client privilege, as it is ethics opinions embedded in calendar entries, or ethics opinions or communications about such opinions in emails, that were provided to the Secretary by attorneys in the Ethics Law and Programs Division of Commerce's Office of the General Counsel. *See* Bogomolny Decl. ¶ 38, Ex. 1 ("Index") at 1-3. Attorneys from that office provide guidance and legal advice to Commerce employees regarding conflict of interest, and routinely review proposed

meetings for Secretary Ross that involve individuals or organizations outside of the executive branch to advise him whether any conflict of interest or potential conflict of interest is presented by the proposed meeting. *Id.* ¶¶ 39-41. The legal advice provided by attorneys from the Ethics Law and Programs Division assist the Secretary's decision-making with respect to the proposed meeting. *Id.* ¶ 40.

The withheld information in categories A through C includes: (1) requests for the attorneys' opinion regarding potential conflicts-of-interest in various contexts, such as the Secretary's participation in particular phone calls and outside events; (2) the communication to counsel of pertinent information concerning the events; and (3) the legal advice provided by counsel. *Id.* ¶ 38; Index at 1-3. The written consultations were necessary, in part, because the Secretary acts as his own designee, in consultation with a designated agency ethics official, for the purposes of making the necessary ethics determination. *Id.* ¶ 40. The withheld information was also kept confidential, as it was not disseminated outside the agency. *Id.* ¶ 38.

The withheld material in category D is from an email from Commerce's General Counsel to senior Commerce officials and consists of the General Counsel's opinion and assessment of potential litigation and other risks arising from a proposed trade policy – specifically, a draft proclamation on adjusting imports of steel into the United States. *Id.* ¶¶ 42; Index at 4. The General Counsel's advice was not disseminated outside Commerce. *Id.* The challenged withholdings in categories A through D are therefore communications to and from counsel in connection with specific requests for legal advice. Thus, the withholdings fall squarely within the protection of the attorney client privilege. *See, e.g.*, *In re Sealed Case*, 737 F.2d at 98-99.

**B.    Commerce properly relied on the deliberative process privilege.**

The deliberative process privilege is a "long-recognized privilege" intended to "prevent injury to the quality of agency decisions" by permitting "the withholding of all papers which reflect

the agency's group thinking in the process of working out its policy." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151, 152–53 (1975).  The privilege is intended to "encourage the frank discussion of legal and policy issues within the government." *Access Reports v. DOJ*, 926 F.2d 1192, 1194 (D.C. Cir. 1991) (quoting *Wolfe v. U.S. Dep't of Health and Human Servs.*, 839 F.2d 768, 773 (D.C. Cir. 1988) (*en banc*)) (internal quotation marks omitted).  It also "protects the public from confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon" and ensures the "integrity of the decision-making process" by allowing agency officials to be judged for their final decisions, "not for matters they considered before making up their minds." *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (quoting *Jordan v. DOJ*, 591 F.2d 753, 773 (D.C. Cir. 1978)).

The deliberative process privilege "protects materials that are both predecisional and deliberative." *Mapother v. DOJ*, 3 F.3d 1533, 1537 (D.C. Cir. 1993).  A predecisional record is one that "was generated before the adoption of an agency policy." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (quoting *Coastal States Gas Corp.*, 617 F.2d at 866).  A deliberative record is one that "reflects the give-and-take of the consultative process." *Coastal States Gas*, 617 F.2d at 866. The privilege typically covers documents such as "drafts, recommendations, proposals, and suggestions that reflect the personal opinions of the author rather than the policy of the agency." *Bloomberg, L.P. v. SEC*, 357 F. Supp. 2d 156, 168 (D.D.C. 2004).  The privilege does not protect "purely factual material," but it does cover factual material that would disclose "the inner workings of the deliberative process itself" or "is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *Elec. Frontier Found. v. DOJ*, 739 F.3d 1, 13 (D.C. Cir. 2014) (citations and internal quotation marks omitted). Commerce withheld information and records related to press-relations materials, deliberations concerning a draft Presidential proclamation, drafts of Commerce's Section 232 reports, a draft site

visit agenda, documents concerning meetings held at the White House and attended by senior

Commerce officials, roll-out plans, and briefing materials from the International Trade

Administration.

   *Public-Relations materials.*   Commerce withheld information in categories C and F about

public-relations matters, including drafts of press-relations documents, such as proposed press

talking points, draft media fact sheets, and draft responses to media reports, as well as portions of

emails considering responses to media inquiries and news articles.   Bogomolny Decl. ¶¶ 45, 48;

Index at 2-3, 5-6.   The challenged withholdings are predecisional to the public statements made by

officials.   *Id.*   Release of the information would reveal the official's objectives, the proposed media

strategy, and the deliberative process of the authors' of deciding what information to include in the

media strategy.   *Id.*   It is well-established that "documents reflect[ing] intra-agency deliberations on

communications with the media … fall within the deliberative process privilege and are covered

under Exemption 5."   *Freedom Watch, Inc. v. NSA*, 49 F. Supp. 3d 1, 8 (D.D.C. 2014).[2]   This includes

"agency deliberations about how to respond to media inquiries regarding prior agency actions[,] …

discussions about press coverage of existing agency policies, … suggested talking points about how

to answer questions," "debates over whether to accept certain interview requests, discussions of

media reports, and so on." *Competitive Enter. Inst. v. EPA*, 12 F. Supp. 3d 100, 118 (D.D.C. 2014)

(citing cases) (citations omitted).   Thus, the information in categories C and F was properly withheld

based on the deliberative process privilege.

   *Deliberations Concerning Draft Presidential Proclamation.*   The portion of the email withheld in

category D is protected by the deliberative process privilege.   The March 16-17, 2018 email

---

[2]  *See also Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 187-88 (D.D.C. 2017); *Comm. on Oversight & Gov't Reform, U.S. House of Representatives v. Lynch*, 156 F. Supp. 3d 101, 112 (D.D.C. 2016); *Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.*, 110 F. Supp. 3d 215, 220-21 (D.D.C. 2015); *CREW v DOJ*, 949 F. Supp. 2d 225, 235 (D.D.C. 2013); *Judicial Watch, Inc. v. U.S. Dep't of the Treasury*, 796 F. Supp. 2d 13, 30-31 (D.D.C. 2011).

exchange between officials concerns Commerce's proposed comments to a draft Presidential proclamation on imports of steel into the United States. Bogomolny Decl. ¶ 46; Index at 4. The email discussion is predecisional to the President's issuance of the proclamation. *Id.* The withheld information is also plainly deliberative. *Id.* The email exchange presents Commerce official's views on the draft proclamation as well as Commerce's establishment of an administrative procedure to process Section 232 exclusion requests. *Id.* Such a conversation considering whether or not to make a particular recommendation is the essence of "the give-and-take of the consultative process." *Coastal States Gas*, 617 F.2d at 866.

*Draft Section 232 Reports.* The records withheld in category E are predecisional drafts of reports prepared by Commerce regarding the effect of imports of steel and aluminum on the national security. The drafts of two reports in category E are plainly predecisional and deliberative. Bogomolny Decl. ¶ 47; Index at 4-5. The drafts are predecisional to the release of the reports on January 11, 2018 and January 18, 2018. *Id.* There is no question that the drafts are deliberative. They reflect the process of the agency's decision about what information to include in the reports and how to present that information. *Id.* Moreover, some of the drafts contain revisions in redline and comments. *Id.* Such drafts are quintessential examples of deliberative documents. *See Dudman Comm'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987) (exempting drafts of official Air Force histories); *Russell*, 682 F.2d at 1048-49 (same). Thus, deliberative process privilege applies to the drafts in category E.

*Draft Site Visit Agenda.* The document withheld in Category G is a draft, predecisional agenda for a proposed site visit to a steel producer. The draft agenda is predecisional and deliberative. Bogomolny Decl. ¶ 49; Index at 6. The agenda is marked "draft," was prepared before the planned site visit, and discloses proposed events that were not part of the final site visit. *Id.* It is predecisional to the final, approved agenda. *Id.* The draft agenda is deliberative because it reflects

9

the author's views regarding the proposed site visit, press conference, and panel discussion.  *Id.*  For these reasons, the draft agenda was properly withheld based on the deliberative process privilege.

*White House Meeting Documents.*  The withheld documents and redacted materials in category H consist of documents, emails, and calendar entries about meetings attended by Commerce officials at the White House.  Bogomolny Decl. ¶ 50; Index at 6-7.  Except for two withholdings,[3] the documents, calendar entries, and portions of emails withheld in category H reveal agendas for interagency policy meetings conducted by the National Security Council's Policy Coordination Committees and discussions held at those meetings.  *Id.*  The withheld materials are predecisional to the release of Commerce's Section 232 reports in January 2018, to the Presidential Proclamation, and to decisions regarding Commerce's administration of Section 232 exclusion requests.  *Id.*  The withheld materials are plainly deliberative.  They disclose the interagency deliberative process of deciding trade policy, including recommendations that reflect the personal opinions of the authors as to the issues considered at the meetings in formulating trade policy, and the recommendations and tasks to be done.  *Id.*  Release of the materials in full would have a chilling effect on the open and frank exchange of ideas, recommendations, and opinions that occurs when officials are developing a strategy for official action.  *Id.* ¶ 54.  Thus, the withheld materials are precisely the type of information that is protected by the deliberative process privilege.  *See Judicial Watch, Inc. v. U.S. Dep't of State*, 282 F. Supp. 3d 36, 49 (D.D.C. 2017) (holding email chain between officials developing a strategy for official action is deliberative).

*Section 232 Roll-Out Plans.*  The documents withheld in Category I are drafts of interagency diplomatic, media, and legislative efforts supporting Commerce's Section 232 actions—basically

---

[3]  Two withholdings in category H of the *Vaughn* index consist of the subject line of the calendar entries for two separate meetings.  *See* Index at 7.  For these calendar entries, the subject line contains the name of an exercise attended by the Secretary, release of which could reveal an inter-agency deliberative process relating to space.

proposed roll-out plans for Commerce's Section 232 actions, including a proposed timeline and the deliverables required to execute the plans.  Bogomolny Decl. ¶ 52; Index at 7-8.  The withheld documents pre-date the final roll-out plan and the actual public announcement of Commerce's Section 232 actions, and therefore are predecisional.  *Id.*  The plans are also deliberative.  They contains the author's recommendations for diplomatic, media, and legislative strategies to support the disclosure of Commerce's Section 232 actions.  *Id.*  For these reasons, the documents in category I were properly withheld based on deliberative process privilege.

*Briefing Material.*  Category J consists of briefing material and recommendations from the International Trade Administration that was withheld from a calendar entry for a meeting between the Secretary and a Romanian official.  The briefing information withheld by Commerce in category J is predecisional and deliberative.  Bogomolny Decl. ¶ 53; Index at 8.  The briefing information is predecisional to the meeting.  *Id.*  The information is deliberative because it consists of the International Trade Administration's opinions, talking points, and recommendations regarding the Secretary's meeting.  *Id.*  Such recommendations "reflect the personal opinions of the author rather than the policy of the agency" and therefore are deliberative.  *Bloomberg, L.P.*, 357 F. Supp. 2d at 168.

For these reasons, Commerce properly withheld ten categories of information and documents under FOIA Exemption 5.

## II.     Commerce Properly Withheld Information Pursuant to FOIA's Exemption 6.

Commerce properly withheld information in categories K and L from the Secretary's calendar pursuant to FOIA Exemption 6.  That exemption "protects information about individuals in 'personnel and medical files and similar files' when its disclosure 'would constitute a clearly unwarranted invasion of personal privacy.'"  *Shapiro v. DOJ*, 153 F. Supp. 3d 253, 257 (D.D.C. 2016) (quoting 5 U.S.C. § 552(b)(6)).  The D.C. Circuit has explained that Exemption 6 can embrace "bits of personal information, such as names," *Judicial Watch*, 449 F.3d at 152, but the mere fact that an

agency file or record contains personal, identifying information is not enough—the information must also be "of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion," *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002).

To make that determination, the agency weighs "'the private interest involved (namely the individual's right of privacy) against the public interest (namely, the basic purpose of [FOIA], which is to open agency action to the light of public scrutiny).'" *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 304 (D.D.C. 2007) (quoting *Judicial Watch*, 449 F.3d at 153).

The withheld portions of the two calendar entries in category K contain an email from a private individual to the Secretary's personal email account, and information about a private individual who organized a non-profit corporation's annual dinner that had invited the Secretary to attend. Bogomolny Decl. ¶ 57; Index at 8-9. These withholdings contain personal, identifying information about private individuals. *Id.* The email discloses the author's personal discussions with the Secretary and contains a dinner invitation to the Secretary and his wife. *Id.* The email contains the personal email addresses of the Secretary, his wife, and the email's author. *Id.* The other entry about the non-profit corporation's annual dinner includes the names of two other expected attendees, the name and telephone number of the event organizer, and the Secretary's wife's personal email address. *Id.* The withholdings in category L consist of calendar entries from the Secretary's calendar set aside for his personal travel time, medical appointments, private events, and medical appointments. Bogomolny Decl. ¶ 57; Index at 9.

The calendar entries are "similar files" protected from disclosure under FOIA Exemption 6. A record is a similar file if it contains personal information identifiable to a particular person. *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599-602 (1982). Here, the entries include the names and email addresses of individuals outside of the government, as well as the Secretary and his wife. Bogomolny Decl. ¶ 57; Index at 8-9. Thus, because the information contained in the entries are

identifiable to those individuals, the entries are "similar files." *See, e.g.*, *Seife v. Dep't of State*, 298 F. Supp. 3d 592, 623-24 (S.D.N.Y. 2018) (holding emails, proposed talking points, draft opening statements, and schedules containing the names and email addresses of officials and others are "similar files").

Upon review of the materials in categories K and L, Commerce determined that that the privacy interest in the withheld information outweighs the public interest in its disclosure. Bogomolny Decl. ¶¶ 58-61; Index at 8-9.  Commerce determined that the individuals' privacy interests were substantial.  The attendees of the dinners are private citizens.  Bogomolny Decl. ¶ 58; Index at 8-9.  Moreover, the author of the personal email pasted into the Secretary's calendar did not appear to have intended for the email to be copied on a government calendar system or known that Commerce would provide the information in the email more broadly or publicly.  Bogomolny Decl. ¶ 58.  Similarly, the Secretary possesses an interest in protecting the details concerning his travel, attendance at private events, and medical appointments from public disclosure, particularly because the disclosure of such information may pose a security risk.  *Id.* ¶ 61; Index at 9.

On the other side of the scale, Commerce determined that there is no public interest in disclosing the identities of attendees of private dinners with the Secretary and his wife, and the location of those dinners, because that information does not reveal anything about how Commerce performs its duties.  *Id.* ¶ 59.  Likewise, the details of the Secretary's personal travel time, medical appointments, personal dinners, private events, and medical appointments shed no light on how Commerce conducts its business.  *Id.* ¶ 61.  For these reasons, Commerce properly determined that the privacy interests in the information withheld in categories K and L outweigh the public interest in disclosure and properly withheld this information pursuant to Exemption 6.  *Id.* ¶¶ 60-61.

**III.    Commerce Did Not Waive its Ability to Protect Certain Information Under Exemptions 5 and 6 by Mistakenly Producing it.**

As a general matter, "when an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that information." *ACLU v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013).   The D.C. Circuit has, however, narrowly construed the "official acknowledgement" doctrine.   A plaintiff must satisfy three criteria: (1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure. *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (citing *Fitzgibbon v. CIA*, 911 F.2d 755, 765-66 (D.C. Cir. 1990)).   While the information Commerce inadvertently disclosed in its original production of the Secretary's calendar satisfies the first two criteria, it does not satisfy the third criteria because as an erroneous, mistaken production, it was not an official, authorized disclosure.

A purposeful, yet unauthorized, disclosure of documents does not constitute a waiver of an applicable FOIA exemption. *See, e.g.*, *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 742 n20 (D.C. Cir. 1983) (agency's unauthorized disclosure of documents it seeks to withhold did not waive FOIA exemption); *Pub. Citizen Health Research Group v. FDA*, 953 F. Supp. 400, 404-06 (D.D.C. 1996) (finding no waiver where material accidently released and information not disseminated by requester); *Kay v. FCC*, 867 F. Supp. 11, 23-24 (D.D.C. 1994) (agency did not waive Exemption 7(A) by inadvertently disclosing 6 unredacted documents in a 1,474 page release).   *Cf. Montgomery v. IRS*, 330 F. Supp. 3d 161, 169 (D.D.C. 2018), *reconsideration denied*, 356 F. Supp. 3d 74 (D.D.C. 2019) (finding disclosure of the existence of records during the administrative process did not amount to an official acknowledgement of records that would waive a *Glomar* response).

Nor can an agency waive an individual's privacy interests at all, since the privacy interests at stake under Exemption 6 belong to the individual, not the agency. *See, e.g., Prison Legal News v. Exec.*

*Office for U.S. Attorneys*, 628 F.3d 1243, 1249 (10th Cir. 2011); *Sherman v. Dep't of the Army*, 244 F.3d 357, 363 (5th Cir. 2001); *Blackwell v. FBI*, 680 F. Supp. 2d 79, 94 n.6 (D.D.C. 2010).

And when an agency takes steps to correct a mistaken disclosure, as Commerce did here, it demonstrates that the disclosure was indeed inadvertent and unauthorized. *See United States v. Story Cty., Iowa*, 28 F. Supp. 3d 861, 874 (S.D. Iowa 2014); *Astley v. Lawson*, 1991 WL 7162, at *8 (D.D.C. Jan. 11, 1991). *See also Williams v. District of Columbia*, 806 F.Supp.2d 44 (D.D.C. 2011) (holding that in the attorney-client privilege context, inadvertent disclosures do not waive privilege when the holder of the privilege promptly took reasonable steps to rectify the error); *Bowles v. Nat'l Ass'n of Home Builders*, 224 F.R.D. 246, 253-54 (D.D.C. 2004) ("Courts have consistently held that, in cases of involuntary disclosure, waiver occurs only when the holder has failed to take reasonable steps to reclaim the protected material.") (internal quotation marks and citations omitted).

The disclosure here was undisputedly caused by a mistake of an agency employee, and Commerce took reasonable steps to correct the disclosure.  Once notified during the course of litigation that one set of records produced to CoA Institute contained inconsistent withholdings of ethics opinions, agency counsel alerted his leadership about the inconsistent disclosures and investigated the circumstances surrounding the disclosure.  Bogomolny Decl. ¶¶ 19, 21-23.  During that investigation, Commerce determined that a portion of records from the Secretary's calendar mistakenly had not been properly reviewed and redacted prior to production.  *Id.* ¶ 23.  Following its investigation and after conferring with the Department of Justice, Commerce determined that the release of the information from the Secretary's calendar was not authorized, and subsequently sent a corrected version of the records to CoA Institute and asked it to substitute the corrected version for the original.  *Id.* ¶ 24-30 and Ex. 12 thereto.  Accordingly, the mistaken disclosure does not waive exemptions asserted for withholdings from the Secretary's calendar.

## **CONCLUSION**

For the foregoing reasons, Commerce respectfully requests that the Court grant it summary judgment on all of CoA Institute's claims.

Dated:  October 4, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director, Federal Programs Branch

 /s/ Robert M. Norway
ROBERT M. NORWAY
Trial Attorney (D.C. Bar No. 490,715)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, N.W.
Washington, D.C. 20530
Telephone: (202) 353-0889
Facsimile: (202) 616-8470
Email: robert.m.norway@usdoj.gov

*Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAUSE OF ACTION INSTITUTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| UNITED STATES DEPARTMENT | ) |
| OF COMMERCE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Case No. 1:18-cv-2397 (JEB)

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Local Rule 7(h)(1), Defendant United States Department of Commerce respectfully submits the following statement of material facts as to which there is no genuine dispute:

1.      In August and September 2018, Cause of Action Institute ("CoA Institute") submitted three separate FOIA requests to the United States Department of Commerce ("Commerce") seeking the calendars of several high-ranking Commerce officials, including Secretary Wilber Ross; records concerning the staffing and procedures for processing product exclusion requests under Section 232 of the Trade Expansion Act of 1932; and communications to or from eleven Commerce officials that contained certain search terms.  October 4, 2019 Declaration of Michael Bogomolny ("Bogomolny Decl.") ¶¶ 3, 5, 7.

2.      Commerce acknowledged receipt of the FOIA Requests and assigned tracking numbers (the "1990 Request," the "2062 Request", and the "2063 Request").  Bogomolny Decl. ¶¶ 4, 6, 8.

3.      The parties negotiated a narrowing of the 2063 Request.  Bogomolny Decl. ¶ 9.

4.      Commerce made a series of productions of responsive, non-exempt records between November, 2018 and June, 2019.  Bogomolny Decl. ¶¶ 11-13, 16-17.

5.      In total, Commerce produced 2,712 pages of records in its productions, withheld 26 records in full, and withheld information in part from a number of records.  Bogomolny Decl. ¶¶ 12, 13, 16, 17.

6.      The parties conferred regarding Commerce's withholdings, and CoA Institute's challenges thereto, on July 13, 2019.  Bogomolny Decl. ¶ 19.

7.      CoA Institute represented that it is not challenging the adequacy of Commerce's search for responsive records, but that it is challenging 18 withholdings in Commerce's productions, as well as all of the records withheld in full in response to the 2063 Request.  Bogomolny Decl. ¶¶ 19-20.

8.      During the conferral, CoA Institute notified Commerce, through counsel, that Commerce had included in its production at least nine entries in the Secretary's calendar of ethics opinions that were unredacted.  Bogomolny Decl.¶ 20.

9.      In conjunction with the preparation of its Vaughn index, counsel for Commerce, Mr. Bogomolny, subsequently brought the disclosure of ethics opinions to the attention of his leadership and began investigating the circumstances surrounding the disclosure.  Bogomolny Decl. ¶ 21-23, Ex. 12 thereto.

10.      Mr. Bogomolny determined that during the processing of records in response to CoA Institute's FOIA requests, a portion of the Secretary's calendar was not properly reviewed and redacted prior to its production.  Bogomolny Decl. ¶ 23.

11.      While the entire calendar file had undergone global redactions of personally identifiable information, such as email addresses and telephone numbers, it was discovered that approximately 80 pages of the Secretary's calendar mistakenly had not been properly reviewed. Bogomolny Decl. ¶ 23.

12.     Commerce notified undersigned counsel about concerns with the disclosure of ethics opinions on August 21, 2019, and Commerce continued to discuss the issue with DOJ into September.  Bogomolny Decl. ¶¶ 25-27.

13.     Commerce ultimately determined that the release of the information was inadvertent and not authorized.  Bogomolny Decl. ¶ 28.

14.     On September 23, 2019, Commerce notified CoA Institute that it had discovered that pages 208 to the end of the production of the Secretary's calendar only had some global exemptions applied but did not reflect a full review, and that as a result, some personal information and privileged material was inadvertently produced.  Bogomolny Decl. ¶¶ 29-30.

15.     Commerce served on CoA Institute a corrected version of the file containing the Secretary's calendar and asked CoA Institute to replace its copy of the calendar with the corrected version.  *See* Ex. 12 to Bogomolny Decl.

16.     Commerce also provided a change log showing the additional exemptions claimed. Bogomolny Decl. ¶¶ 30, Ex. 12.

17.     The parties subsequently conferred regarding Commerce's additional withholdings. Bogomolny Decl. ¶ 31.

18.     CoA Institute indicated that it was challenging the additional withholdings except for withholdings of telephone numbers, conference line passcodes, and email addresses.  Bogomolny Decl. ¶ 31.

19.     Commerce withheld deliberative, predecisional material from its responsive records pursuant to FOIA Exemption 5.  Bogomolny Decl. ¶ 32.

20.     Commerce has identified and adequately justified the basis for each of the Exemption 5 withholdings at issue in this case through its Vaughn Index and the Declaration of Michael Bogomolny.  *See* Bogomolny Decl. ¶¶ 32-54; Ex. 1 ("Index") thereto.

21.     The withheld materials in categories A through D consist of confidential communications from or to attorneys regarding (1) requests for the attorneys' opinion regarding potential conflicts-of-interest in various contexts, such as the Secretary's participation in particular phone calls and outside events; (2) the communication to counsel of pertinent information concerning the events; and (3) the legal advice provided by counsel.  *See* Bogomolny Decl. ¶¶ 38-42; Index at 1-4.

22.     The withheld materials in categories C through J aided Commerce's deliberative process with respect to trade policy, potential actions pursuant to Section 232 of the Trade Expansion Act of 1932, and media strategy.  *See* Bogomolny Decl. ¶¶ 45-53; Index at 2-8.

23.     Disclosing the withheld material would harm Commerce's deliberations, diminish the quality of government decision making, and potentially confuse the public regarding Commerce's official positions.  *See* Bogomolny Decl. ¶ 54.

24.     Commerce withheld material from its responsive records pursuant to FOIA Exemption 6.  Bogomolny Decl. ¶¶ 57-61.

25.     The withheld materials in categories K and L contain identifying information about individuals.  Bogomolny Decl. ¶ 54; Index at 8-9.

26.     Upon review of the materials in categories K and L, Commerce determined that the individuals' privacy interests were substantial.  Bogomolny Decl. ¶¶ 58-61; Index at 8-9.

27.     On the other side of the scale, Commerce determined that there is no public interest in disclosing the withheld information because that information does not reveal anything about how Commerce performs its duties.  *Id.* ¶ 59, 61.

28.     Commerce therefore concluded that that the privacy interests in the withheld information outweighs the public interest in its disclosure.  Bogomolny Decl. ¶¶ 60-61; Index at 8-9.

Dated:  October 4, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director, Federal Programs Branch

 /s/ Robert M. Norway
ROBERT M. NORWAY
Trial Attorney (D.C. Bar No. 490,715)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, N.W.
Washington, D.C. 20530
Telephone: (202) 353-0889
Facsimile: (202) 616-8470
Email: robert.m.norway@usdoj.gov

*Counsel for Defendant*

## <u>CERTIFICATES OF FILING AND SERVICE</u>

I hereby certify that on this __4th__ day of October, 2019, a copy of the foregoing Motion for Summary Judgment, Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, the Statement of Material Facts as to Which There is No Genuine Dispute, and the Declaration of Michael Bogomolny of the United States Department of Commerce were filed electronically in PDF format at dcd_cmecf@dcd.uscourts.gov.

I also certify that copy of the foregoing Motion for Summary Judgment, Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, the Statement of Material Facts as to Which There is No Genuine Dispute, and the Declaration of Michael Bogomolny of the United States Department of Commerce were sent via electronic mail to:

Lee A. Steven at lee.steven@causeofaction.org, ecf@causeofaction.org; and

Russel James Valvo , III at james.valvo@causeofaction.org.


____/s Robert M. Norway____